UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
JOHN MCGEE,

          Plaintiff,                             MEMORANDUM AND ORDER

      - against -                             09 Civ. 3579 (ILG) (RLM)

STATE FARM MUTUAL AUTOMOBILE
INSURANCE CO.,

          Defendant.
------------------------------------------------------x
GLASSER, Senior United States District Judge:

On July 28, 2009 plaintiff John McGee ("McGee") initiated this diversity action against defendant State Farm Mutual Insurance Company ("State Farm") in New York State Supreme Court, asserting, among other things, claims for fraud and breach of contract. State Farm on August 18, 2009 removed the action to this Court pursuant to 28 U.S.C. § 1441(a). On September 4, 2009, McGee filed an amended complaint nearly identical to his original complaint that added additional defendants—all New York residents—whose joinder would destroy diversity and also filed a motion to remand the action to state court. State Farm on September 8, 2009 opposed McGee's motion to remand and also moved to dismiss both McGee's original and amended complaints.

By Memorandum and Order dated November 18, 2009, the Court denied McGee's motion to remand and ordered that the non-diverse parties named in the amended complaint be dropped pursuant to Fed. R. Civ. P. 21. See McGee v. State Farm Mut. Auto. Ins. Co., 684 F. Supp. 2d 258, 265 (E.D.N.Y. 2009). Currently before the Court is State Farm's motion to dismiss the amended complaint pursuant to Rules 8(a)(2), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure.

1

For the reasons set forth below, State Farm's motion is hereby GRANTED, and the amended complaint is dismissed in its entirety with prejudice.

## I. BACKGROUND

McGee is a licensed physician in the State of New York who provided medical care to eligible insured persons covered by State Farm through automobile insurance contracts. Amended Complaint dated August 31, 2009 ¶ 1 ("Am. Compl.") (Dkt. No. 20). Asserting theories of fraud, breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, and equitable subordination, McGee alleges that he has sustained more than four million dollars in damages as a result of a scheme by State Farm to deny him payment for his treatment of its insureds. Am. Compl. ¶ 55.[1] McGee previously brought a similar action against State Farm that was before Judge Block and another against All State Insurance Company that was before Judge Vitaliano; both of those cases involved allegations nearly identical to those here, and both were dismissed. See McGee v. Allstate Ins. Co., No. 08–CV–0842 (ENV) (MDG), 2011 WL 3497527 (E.D.N.Y. Aug. 3, 2011) (dismissing fraud, breach of contract, unjust enrichment, breach of the duty of good faith and fair dealing, and equitable subordination claims); McGee v. State Farm Mut. Auto. Ins. Co., No. 08-CV-392 (FB) (CLP), 2009 WL 2132439 (E.D.N.Y. July 10, 2009) ("McGee I") (dismissing civil RICO claim). This action, like McGee's previous actions in this district, involves certain aspects of New York's no-fault insurance law. A brief review of that regime is thus in order.

---

[1] Elsewhere in the amended complaint, McGee alleges that he sustained damages in the amount of only three million dollars. Am. Compl. ¶ 224.

## A. New York's No-Fault Insurance Law

Under the Comprehensive Motor Vehicle Insurance Reparation Act, New York's no-fault insurance law, State Farm is required to indemnify all covered persons for the treatment of "personal injury arising out of the use or operation of a [covered] motor vehicle." N.Y. Ins. Law § 5102(b) (McKinney 2005). Treatment must be "necessary for the treatment of injuries sustained," 11 N.Y.C.R.R. § 65.3.16(a)(6), and claimants seeking reimbursement thus must substantiate their claims by "submit[ing] to a medical examination by a physician selected by, or acceptable to, the [insurer] when, and as often as, the [insurer] may reasonably require," 11 N.Y.C.R.R. § 65-1. These examinations are referred to as "independent medical examinations" ("IMEs").

"Patients covered by no-fault insurance often assign their claims to their health care providers rather than seek reimbursement from insurance carriers directly." State Farm Mut. Auto Ins. Co. v. Mallela, 4 N.Y.3d 313, 319, 794 N.Y.S.2d 700, 827 N.E.2d 758 (2005) (citing 11 N.Y.C.R.R. § 65-3.11)). If a claim is approved, "[t]he insurer upon assignment by the applicant shall pay the providers of services directly." Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co., 196 F. Supp. 2d 378, 384 (S.D.N.Y. 2002) (citation and internal quotation marks omitted). A claim may not be approved where, for example, the insurer determines as a result of an IME that treatment was not medically necessary. McGee I, 2009 WL 2132439, at *1.

## B. The Complaint[2]

McGee provided medical care to patients with no-fault automobile insurance policies issued by State Farm who had assigned their policies to him.  Am. Compl. ¶¶ 1, 17, 209.  State Farm requires claimants to submit to IMEs and uses various referral services to perform the IMEs.  Am. Compl. ¶ 13.

McGee alleges that "[i]n order to maximize [its] profits as well as to reduce its exposure regarding claims for policy benefits, STATE FARM conspired and agreed with the other Defendants to utilize illegal medical referral services and/or brokers to procure forged and fraudulent [IME] reports" to deny him reimbursement.  Am. Compl. ¶ 7.  "STATE FARM engaged the other Defendants with the expectation that all reports received would be favorable to the insurance carrier" and "communicated with and to the other Defendants that if they did not provide sufficient denials within the evaluation reports then STATE FARM would not use their illegal medical referral service."  Am. Compl. ¶ 8.  As a result of these fraudulent reports, McGee was, among other things, wrongfully denied reimbursement for healthcare services that he had already provided.  Am. Compl. ¶ 8.  McGee avers that State Farm has been operating this scheme since December 1998 and that it has continued uninterrupted since that time.  Am. Compl. ¶ 55.  He seeks compensatory and punitive damages.

State Farm moves to dismiss the amended complaint on several grounds, arguing, among other things, that:  (1) McGee lacks standing to assert his claims; (2) his

---

[2] The following allegations are taken from McGee's complaint and are accepted as true for the purpose of this motion.

fraud claim is barred by collateral estoppel; (3) New York law does not recognize an independent cause of action for breach of the duty of good faith and fair dealing; (4) his breach of contract claim fails because he does not identify any specific contractual provision that State Farm breached; (5) his unjust enrichment claim is duplicative of his breach of contract claim; and (6) his equitable subrogation claim fails because McGee cannot demonstrate that he paid under compulsion an existing debt owed by State Farm.  Memorandum of Law in Support of Motion to Dismiss the Complaint dated September 8, 2009 ("Def.'s Mem.") at 11-33 (Dkt. No. 22).  McGee on February 16, 2010 filed his opposition to the motion to dismiss, and State Farm on April 29, 2010 filed its reply.  <u>See</u> Memorandum of Law in Opposition to State Farm's Motion to Dismiss the Complaint dated February 15, 2010 ("Pl.'s Opp'n") (Dkt. No. 46); State Farm's Reply in Support of its Motion to Dismiss the Complaint dated April 29, 2010 ("Def.'s Reply") (Dkt. No. 47).[3]

## II. DISCUSSION

### A.  Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss pursuant to Rule 12(b)(6), McGee's pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S.

---

[3] McGee delayed filing his opposition until after the Court ruled on his motion for reconsideration of the Court's Memorandum and Order dated January 14, 2010 denying his motion to remand the action to state court.

544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).[4] A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Although detailed factual allegations are not necessary, the pleading must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation;" mere legal conclusions, "a formulaic recitation of the elements of a cause of action," or "naked assertions" by the plaintiff will not suffice. Id. at 1949 (alteration in original) (internal quotations, citations, and alterations omitted). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).

### B. Article III Standing

State Farm first contends that McGee lacks standing to bring this action. Def.'s Mem. at 11-12. Standing is a threshold issue and "an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citing Allen v. Wright, 468 U.S. 737, 751, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984)). Article III standing "requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Monsanto Co. v. Geertson Seed Farms, 130 S. Ct. 2743, 2752, 177 L. Ed. 2d 461 (2010) (citing Horne v. Flores, 557

---

[4] In addition to the facts alleged in the complaint, a district court considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) may also consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

U.S. —, 129 S. Ct. 2579, 2591-92, 174 L. Ed. 2d 406 (2009)). "[I]n all standing inquiries, the critical question is whether [the plaintiff] has 'alleged such a personal stake in the outcome of the controversy as to warrant <u>his</u> invocation of federal-court jurisdiction.'" <u>Hornes</u>, 129 S. Ct. at 2592 (quoting <u>Summers v. Earth Island Inst.</u>, 555 U.S. 488, 492, 129 S. Ct. 1142, 1148-49, 173 L. Ed. 2d 1 (2009)).

State Farm argues that McGee has suffered no injury and thus has no such personal stake because his alleged standing depends on his having received assignments of rights from his patients, various State Farm insureds—a fact that he has failed to allege sufficiently. Def.'s Mem. at 11-13. State Farm also contends that McGee cannot base his standing upon State Farm's alleged infringement of his purported "constitutional right to practice medicine." Def.'s Reply. at 4-5.

State Farm's latter contention is correct because, contrary to McGee's assertions based on a Fourteenth Amendment property deprivation theory, Pl.'s Opp'n at 3-5, no such constitutional right exists. The Fourteenth Amendment applies only to state actors, not private defendants such as State Farm. <u>See, e.g.</u>, <u>Lugar v. Edmondson Oil Co., Inc.</u>, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982). In any event, even if the Fourteenth Amendment did apply, there is no due process right to practice one's profession free of any restraints. <u>See, e.g.</u>, <u>Conn v. Gabbert</u>, 526 U.S. 286, 291-92, 119 S. Ct. 1292, 143 L. Ed. 2d 399 (1999).

Regarding State Farm's former contention, though McGee's allegations concerning the assignment of his patients' insurance claims to him are hardly the model of clarity, McGee does in fact allege that he is the claims' assignee. <u>See</u> Am. Compl. ¶ 218 ("STATE FARM breached the contract which Dr. McGee is an assignee of [sic] those

rights under the insurance contract."); Am. Compl. ¶ 223 ("Dr. McGee is an assignee for the receivable which are [sic] being sought.").  Further, McGee has attached to the complaint a single denial-of-claim form that has the "Yes" box check-marked in response to the question whether the claim was brought "as assignee."  Compl. Ex. A. Accepting as true McGee's allegations and construing the complaint in favor of McGee as the Court must, see, e.g., Connecticut v. Physicians Health Servs. of Conn., Inc., 287 F.3d 110, 114 (2d Cir. 2002) (since standing is challenged on basis of pleadings, courts must accept all allegations as true and construe complaint in favor of complaining party), the Court concludes that the complaint has sufficiently alleged McGee's standing. See McGee I, 2009 WL 2132439, at *3 (citing Am. Med. Ass'n v. United Healthcare Corp., No. 00 Civ. 2800 (LMM) (GWG), 2002 WL 31413668, at *2 (S.D.N.Y. Oct. 23, 2002)) (even where denial of claim forms attached to complaint indicated that McGee was not assignee of those claims, single allegation that McGee was "assignee of [his patients'] policy benefits" was sufficient to create standing).

Having concluded that McGee has standing, the Court now turns to each of McGee's specific claims against State Farm below.

## C. Fraud

McGee's first claim sounds in fraud, Am. Compl. ¶¶ 129-53, and thus it must meet the particularity requirements of Rule 9(b) of the Federal Rules of Civil procedure.[5]  To satisfy Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

---

[5] Fed. R. Civ. P. 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

8

made, and (4) explain why the statements were fraudulent." Shields v. Citytrust

Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (internal citations and quotation marks

omitted).

State Farm contends that McGee's fraud claim fails to meet the particularity

requirements of Rule 9(b) on several grounds, Def.'s Mem. at 13-26, but as a threshold

matter contends that collateral estoppel bars McGee from asserting fraud claims against

it in this action. Def.'s Mem. at 15-19.

"The elements of fraud under New York law are: (1) a misrepresentation or a

material omission of fact which was false and known to be false by defendant, (2) made

for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the

other party on the misrepresentation or material omission, and (4) injury." Premium

Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009) (internal quotation

marks and citation omitted).[6] State Farm contends that McGee has not alleged that he

justifiably relied upon any alleged misrepresentation by State Farm and that he is

barred from arguing otherwise under the principles of collateral estoppel. Def.'s Mem.

at 15. More specifically, State Farm maintains that Judge Block's conclusion in McGee I

dismissing McGee's civil RICO claims on the grounds that the allegedly fraudulent IME

reports were not calculated to deceive McGee or his patients bars McGee's fraud claim.

Def.'s Mem. at 16-17. McGee does not respond to this argument in detail; instead, he

states that "State Farm's argument is based on RICO which this case at bar has not made

a RICO claim [sic] and therefore is an irrelevant argument . . . ." Pl.'s Opp'n at 7. He

---

[6] Because this is a diversity case, New York law applies. See, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941).

thus appears to contend that because the prior case involved a civil RICO claim, and this case involves a fraud claim, collateral estoppel is inapplicable. The Court disagrees.

Collateral estoppel, also known as issue preclusion, bars litigants from relitigating any fact or issue that has already been fully and fairly litigated in a prior proceeding that produced a final judgment on the merits. See Bank of N.Y. v. First Millenium, Inc., 607 F.3d 905, 918 (2d Cir. 2010) (citing Purdy v. Zeldes, 337 F.3d 253, 258 (2d Cir. 2003)). The party seeking the benefit of collateral estoppel with respect to an issue must demonstrate that the issue decided in the prior proceeding is identical to the issue in the subsequent action while the party resisting the application of collateral estoppel "has the burden of establishing the absence of a full and fair opportunity to litigate the issue." Evans v. Ottimo, 469 F.3d 278, 281-82 (2d Cir. 2006) (internal quotation marks and citation omitted). Further, contrary to McGee's contention, collateral estoppel may apply to claims in a second action between the parties other than those they previously litigated; the specific causes of action need not be the same. See, e.g., Cooper v. Fed. Reserve Bank of Richmond, 467 U.S. 867, 874, 104 S. Ct. 2794, 81 L. Ed. 2d 718 (1984) ("A judgment in favor of either side is conclusive in a subsequent action between them on any issue actually litigated and determined, if its determination was essential to that judgment."); Allen v. McCurry, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980) (prior "decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case").

State Farm has met its burden here. State Farm raised the identical issue—whether McGee can show reliance on any alleged misrepresentation of State Farm in or associated with its allegedly fraudulent IME reports—in this action and the prior action

before Judge Block in <u>McGee I</u>. There, Judge Block addressed, among other things, whether McGee's complaint sufficiently alleged a civil RICO claim against State Farm and ultimately concluded that it did not. <u>McGee I</u>, 2009 WL 2132439, at *5-6. Judge Block reasoned that McGee failed to plead the alleged predicate acts of mail or wire fraud with the requisite particularity. <u>Id.</u> at *4-5. He also reasoned that the predicate acts did not constitute mail or wire fraud as a matter of law because establishing mail or wire fraud "requires showing a scheme or artifice to defraud or obtain money by means of false pretenses, representations, or promises, and such a showing fundamentally requires that someone be <u>deceived</u>," <u>Id.</u> at *5 (internal citations and quotation marks omitted), a showing McGee failed to make in the complaint. Judge Block stated as follows:

> In the conspiracy which McGee alleges, however, none of the defendants' conduct is calculated to deceive anyone. The Providers' allegedly falsified IME reports are not calculated to deceive State Farm because State Farm ordered the falsification in the first place. Neither are the reports calculated to deceive McGee: he knows full well what his own patients' true condition is, and defendants' reports are not intended to convince him otherwise. Nor are the reports calculated to deceive McGee's patients, who apparently do not even receive them, and who are aware of their own injuries in any event. In sum, while defendants' alleged conduct is dishonest and unfair, no one is intended to be duped or taken in.

<u>Id.</u> at *6. It follows that if McGee cannot establish that anyone was deceived by an allegedly false IME report, he also cannot establish that anyone relied upon such a report—a point Judge Block himself recognized. <u>Id.</u> at *5 n.9.

Here, in order to sufficiently allege a fraud claim, McGee must allege among other things, "justifiable reliance . . . on [State Farm's] misrepresentation[s]." <u>Equifax</u>, 583 F.3d at 108, or, in other words, that he was actually deceived by them. And, as in <u>McGee I</u>, the misrepresentations at issue here pertain to purportedly false IME reports.

See, e.g., Am. Compl. ¶ 130 ("Such representations were deceitful and were perpetrated as part of a covert plan or scheme contrived by STATE FARM to procure false and contrived reports, designed in advance to attribute losses to policy exclusions through peer review reports."); Am. Compl. ¶ 134 ("STATE FARM materially misrepresented that the peer review reports were accurate and based in science and for the purpose of treatment of the patient and not in attempt to maximize profits.").  Accordingly, because the issue  decided in McGee I—whether McGee can show reliance on any alleged misrepresentation of State Farm in or associated with its allegedly fraudulent IME reports—is identical to the issue here and because there is no question that McGee had a full and fair opportunity to litigate the issue previously as he submitted briefing on this very same point, McGee I, No. 08-CV-00392, Dkt. No. 130, at 16 ("A regular RICO claim with assertions of mail fraud requires pleading someone relied on the misrepresentations . . . ."), collateral estoppel bars McGee from relitigating the issue here, and McGee's fraud claim is therefore dismissed.

Even if the Court were to conclude that the fraud claim is not barred by collateral estoppel, it would still dismiss the claim on the grounds that its generalized and conclusory allegations are insufficient to satisfy the pleading requirements of Fed. R. Civ. P. 9(b).  Indeed, Judge Vitaliano recently dismissed McGee's fraud claim against All State Insurance Company on this ground, and the allegations regarding fraud in that case were nearly identical to those here.  See All State Ins., 2011 WL 3497527, at *3 & n.1.  There, "the crux of McGee's fraud claim [was] that Allstate created a system of peer reviews and IMEs with the purpose of denying coverage to [State Farm insureds], regardless of the medical necessity of treatment.  Specifically, he claim[ed] that Allstate

demanded a finding denying payment and a finding that the treatment rendered by Dr. McGee to be medically unnecessary." Id. (quotations omitted). The same is true here. McGee alleges that State Farm "dictated . . . that the evaluations and reports must deny the medical necessity for future treatment as well as lack of medical necessity for prior treatment." Am. Compl. ¶ 7. Moreover, there, as here, McGee purported to provide specificity to his claim by providing claim numbers along with corresponding dollar amount that the insurance company allegedly failed to pay him. See Allstate Ins., 2011 WL 3497527, at *3; Am. Compl. ¶¶ 68-119. But "[t]he only thing that these details establish is that plaintiff sought payment for services that [State Farm] refused. . . . [T]hey are not false statements or misrepresentations on their face and McGee says nothing that explains why they are fraudulent." Allstate Ins., 2011 WL 3497527, at *3.

## D. Breach of Contract & Breach of Implied Duty of Good Faith & Fair Dealing

McGee also asserts claims for breach of contract and breach of the implied duty of good faith and fair dealing. Am. Compl. ¶¶ 212-201 at 47-49, 202-18 at 49-52.[7] Like the allegations underlying McGee's other claims, the allegations relevant to these claims are almost entirely conclusory.

To make out a breach of contract claim under New York law a plaintiff must show "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." Diesel Props S.r.l.

_____

[7] Since the amended complaint contains inconsistent numbering of the paragraphs in these sections, the Court notes the pages numbers associated with the relevant allegations as well.

v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011) (citations omitted). "'In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue,'" CreditSights, Inc. v. Ciasullo, No. 05 Civ. 9345 (DAB), 2008 WL 4185737, at *10 (S.D.N.Y. Sept. 5, 2008) (quoting Wolff v. Rare Medium, Inc., 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001)); accord Owens v. Gaffken & Barriger Fund, LLC, No. 08 Civ. 8414 (PKC), 2009 WL 3073338, at *14 (S.D.N.Y. Sept. 21, 2009) (citations omitted).

All contracts also carry an implicit covenant of good faith and fair dealing. This means that each party to a contract "embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" Dalton v. Educ. Testing Serv., Inc., 87 N.Y.2d 384, 639 N.Y.S.2d 977, 663 N.E.2d 289, 291 (1995) (quoting Kirke La Shelle Co. v. Armstrong Co., 263 N.Y. 79, 79, 188 N.E. 163 (1933)).

State Farm argues that the breach of contract claim should be dismissed because the complaint fails to identify a single contract or contractual provision that State Farm has breached. Def.'s Mem. at 28. It further contends that the claim for breach of the implied duty of good faith and fair dealing should be dismissed because the claim is based upon the same allegations that give rise to the plaintiff's breach of contract claim, and it is therefore redundant. Def.'s Mem. at 27. McGee responds that his complaint does, in fact, identify the contract provisions at issue, Pl.'s Opp'n at 12, and maintains that New York does "recognize good faith and fair dealings claims," Pl.'s Opp'n at 8.

McGee's complaint contains vague references to several agreements that purport to provide the basis of his breach of contract claim: "POLICY FORM 9332P.6" and a

NEW YORK STATE PRIVATE PASSENGER AUTO INSURANCE POLICY

endorsement." Am. Compl. ¶ 205 at 49.  These agreements, McGee avers, provide

"mandatory personal injury protection along with other additional coverage such as

bodily injury liability and property damage."  Am. Compl. ¶ 205 at 50.  Though McGee

alleges that "STATE FARM breached . . . duties owed to [him] as an assignee of the

policyholders, . . ." by "repeatedly denying [his] claims for coverage benefits after

multiple and timely requests for reimbursement," Am. Compl. ¶ 209, he fails to identify

any specific provision of these agreements that State Farm has breached and does not

attach the agreements to the complaint.  Further, the only provision in each of these

agreements that he does identify does not relate to the duties owed by State Farm to its

policyholders.  Am. Compl. ¶ 208.  Instead, the provision applies to the obligations of

State Farm's injured policy holders to, upon request of State Farm, submit to an IME:

"[t]he eligible injured person shall submit to medical examination by physicians selected

by or acceptable to, the Company, when, and as often as the Company may reasonably

require."  Am. Compl. ¶ 208.

Further, in the portion of the amended complaint containing McGee's allegations

as to fraud, McGee references another agreement—Medical Payments Coverage-Symbol

C ("Med Pay"), a "private insurance contract which is optional and fall [sic] outside the

New York No-Fault statutes," Am. Compl. ¶ 148, and cites the "Coverage" portion of the

policy, Am. Compl. 149.  It provides that that "[w]e will pay, subject to the limits of the

liability, for reasonable expenses incurred for medical and funeral services that are

necessary due to bodily injury to an insured caused by an accident."  Am. Compl. ¶ 149.

To the extent that McGee contends that State Farm breached a Med Pay agreement, the

amended complaint contains no such allegations. Nor does it contain allegations that any of his patients had such coverage, or if they did, that they also met any of the preconditions for obtaining it, thus bringing the agreement into force.[8]

In a scattershot approach, McGee alleges the nature of State Farm's purported breach in generalities, fraught with legal conclusions not entitled to the assumption of truth.[9] See Iqbal, 129 S. Ct. at 1950. He avers, for example, that "[u]pon information and belief, STATE FARM breached non-delegable and express and implied duties owed to the Plaintiff," by, among other things, failing to conduct an "honest peer review of treatment rendered by Dr. McGee" and failing to "single loss adjust and voluntarily reimburse Dr. McGee." Am. Compl. ¶ 210 at 50-51. But McGee fails to tie any of the allegations to a specific provision of any agreement between State Farm and an insured who has assigned his or her policy to McGee. For this reason, McGee's allegations are insufficient to state a claim for breach of contract, and the claim is therefore dismissed.[10] See, e.g., Eaves v. Designs for Fin., Inc., 785 F. Supp. 2d 229, 259 (S.D.N.Y. 2011) (citing Owens, 2009 WL 3073338, at *14) (breach of contract claim dismissed where plaintiffs

---

[8] McGee acknowledges that "[w]hen payment or coverage is not available for whatever reason under the No Fault Endorsement or No Fault law than [sic] State Farm is required under [Med Pay] to pay for the medical treatment," Pl.'s Opp'n at 12, but the amended complaint nevertheless contains no allegations as to whether Med Pay was even available to any of the patients he treated and, if it was, how specifically State Farm breached the agreement.

[9] The same is true of a vast majority of the pleadings in McGee's amended complaint. Though at 55 pages, the complaint is hardly "a short and plain statement of the claim," Fed. R. Civ. P. 8(a), it nevertheless contains very few well-pleaded factual allegations.

[10] Because the Court resolves the breach of contract claim on this ground, it will not reach the issue of whether the claim passes muster under Rule 8(a)(2).

failed to identify "which documents and which provisions of those documents [defendant] allegedly breached"); <u>CreditSights</u>, 2008 WL 4185737, at *11 (breach of contract counterclaim dismissed because "New York law is eminently clear that a proper breach of contract claim must identify specifically breached contract terms [and] [n]one are so alleged in the counterclaims"); <u>Lewis Tree Serv., Inc., et al. v. Lucent Techs., Inc., et al.</u>, No. 99 Civ. 8556 (JGK), 2000 WL 1277303, *5 (S.D.N.Y. Sept. 8, 2000) (breach of contract claim dismissed because plaintiffs failed to identify contractual provisions that defendant had breached); <u>Shah v. Wilco Systems, Inc.</u>, 126 F. Supp. 2d 641, 653 (S.D.N.Y. 2000) (same).

McGee's claim for breach of the implied duty of good faith and fair dealing is also fatally flawed. New York law does not recognize a separate claim for breach of the implied duty of good faith and fair dealing based on the same facts as a claim for breach of contract. <u>See, e.g.</u>, <u>L-7 Designs, Inc. v. Old Navy, LLC</u>, 647 F.3d 419, 433 n.17 (2d Cir. 2011) ("'[B]reach of [the duty of good faith and fair dealing] is merely a breach of the underlying contract.'" (quoting <u>Fasolino Foods Co. v. Banca Nazionale del Lavoro</u>, 961 F.2d 1052, 1056 (2d Cir. 1992))). And there is no question that McGee's breach of contract and breach of the implied duty of good faith and fair dealing claims are based on the same facts. <u>Compare</u> Am. Compl. ¶ 214 at 47 ("Under New York law, an insurer's duty to an insured for automobile policies imposes a non-delegable obligation to make a prompt, thorough, and reasonable investigation of the merits of claims submitted.") <u>and</u> Am. Compl. ¶ 219 at 48 ("STATE FARM breached and willfully violated the duty of good faith and fair dealing owed to Dr. McGee which among other things required that STATE FARM be honest in dealing with Dr. McGee's claims."), <u>with</u> Am. Compl. ¶ 209

at 50 ("STATE FARM breached non-delegable, express and implied duties owed to the Plaintiff as an assignee of policyholders, . . . by repeatedly denying Plaintiff's claims for coverage benefits after multiple and timely requests for reimbursement.").  Accordingly, because McGee's breach of the duty of good faith and fair dealing claim is redundant of his breach of contract claim, it is dismissed.  See, e.g., FlightSafety Int'l, Inc. v. Flight Options, LLC, 418 F. Supp. 2d 103, 111 (E.D.N.Y. 2005), vacated in part on other grounds, 194 F. App'x 53 (2d Cir. 2006) (per curiam) (breach of covenant of good faith and fair dealing claim dismissed as redundant of breach of contract claim); Tevdorachvili v. Chase Manhattan Bank, 103 F. Supp. 2d 632, 642 (E.D.N.Y. 2000) (citations omitted) (same).

### E.  Unjustment Enrichment

McGee also asserts a claim of unjust enrichment, alleging, among other things, that "STATE FARM has been paid for the insurance contracts which it entered with Dr. McGee's patient. [sic]  STATE FARM has failed to pay over 3 million dollars of services rendered to [sic] Dr. McGee."  Am. Compl. ¶ 225.

As State Farm correctly notes, Def.'s Mem. at 31, in order to state a claim for unjust enrichment under New York law, a plaintiff must allege, "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J. Inc., 448 F.3d 573, 586 (2d Cir. 2006) (citing Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000)); accord Mandarin Trading Ltd. v Wildenstein, 16 N.Y.3d 173, 182, 944 N.E.2d 1104, 919, N.Y.S.2d 465 (2011).

An unjust enrichment claim is duplicative of a breach of contract claim where the cause of action stems from the contractual relationship.  See, e.g., Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."); Leibowitz v. Cornell Univ., 584 F.3d 487, 507 (2d Cir. 2009) ("[I]t is an elementary principle of contract law that, where there exists an express contract for compensation, an action outside that contract will not lie." (citation and quotation marks omitted)).

Here, McGee's unjust enrichment claim stems from the alleged contractual relationship between State Farm and McGee as an assignee of his patients.  It is thus duplicative of McGee's breach of contract claim and is dismissed.  See, e.g., Allstate, 2011 WL 3497527, at *5 n.3 (dismissing McGee's unjust enrichment claim against Allstate based on nearly identical allegations because it was duplicative of breach of contract claim).[11]

## F. Equitable Subrogation

McGee also invokes the doctrine of equitable subrogation, again alleging that he rendered services to State Farm insureds and has not received payment from State Farm.  Am. Compl. ¶¶ 227-50.  This claim fails as well.  "Rooted in equity, the purpose of

---

[11] Even if the unjust enrichment claim was not duplicative of the breach of contract claim, it would still fail as McGee has not alleged that any medical services he rendered to his patients bestowed a benefit upon State Farm or that the benefit was "bestowed [by him] at the defendant's behest."  Barbagallo v. Marcum LLP, — F. Supp. 2d —, No. 11 Civ. 1358 (JBW), 2011 WL 5068086, at *13 (E.D.N.Y. Oct. 25, 2011) (citations omitted).

the subrogation doctrine is to afford a person who pays a debt that is owed primarily by someone else every opportunity to be reimbursed in full." Chem. Bank v. Meltzer, 93 N.Y.2d 296, 304, 712 N.E.2d 656, 690 N.Y.S.2d 489 (1999). The doctrine is

> broad enough to include every instance in which one party pays a debt for which another is primarily answerable and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment, and in discharge of an existing liability.

Travelers Cas. & Sur. Co. v. Dormitory Auth., State of N.Y., 735 F. Supp. 2d 42, 90 (S.D.N.Y. 2010) (citation and quotation marks omitted). The doctrine has "allow[ed] insurers to stand in the shoes of their insured to seek indemnification by pursuing any claims that the insured may have had against third parties legally responsible for the loss." All State Ins. Co. v. Mazzola, 175 F.3d 255, 258 (2d Cir. 1999) (citation omitted). Courts have also applied the doctrine in the mortgagee or lienholder context where the mortgagee makes a payment to satisfy an existing debt or lien on property. See, e.g., United States v. Baran, 996 F.2d 25, 28-29 (2d Cir. 1993) ("New York courts have routinely applied subrogation 'where the funds of a mortgagee are used to satisfy the lien of an existing, known incumbrance when, unbeknown to the mortgagee, another lien on the property exists which is senior to his but junior to the one satisfied with his funds.'" (quoting King v. Pelkofski, 20 N.Y.2d 326, 333-34, 282 N.Y.S.2d 753, 758, 229 N.E.2d 435, 439 (1967))). But "New York courts have never applied the doctrine of equitable subrogation on behalf of a medical professional seeking third party payment," AllState, 2011 WL 3497527, at *4, exactly what McGee contends the Court should do here.

McGee argues that the doctrine applies because "State Farm owes a debt to Dr. McGee" in light of the medical services he provided to State Farm's insureds.  Pl.'s Opp'n at 14.  Yet he provides the Court with no authority to support this assertion— reason enough to dismiss this claim.  See AllState, 2011 WL 3497527, at *4.

There are other problems with this claim as well.  McGee does not allege that he treated his patients under compulsion or for the protection of his own interest; he avers merely that "[u]pon information and belief, STATE FARM [insureds] requested and sought treatment by Dr. McGee."  Am. Compl. ¶ 230.  This allegation is insufficient to show compulsion.  See, e.g., Underpinning & Foundation Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am., 726 F. Supp. 2d 339, 353 (S.D.N.Y. 2010) ("A payment is not involuntary simply because it was demanded by the person paid." (citation and quotation marks omitted)).  Finally, the Court rejects McGee's contention that he was compelled to treat his patients because he was under an ethical obligation to do so.  Pl.'s Opp'n at 14.  The complaint contains no such allegation, and "[a] party may not amend its complaint . . . through statements made in its motion papers."  Siti-Sites.com, Inc. v. Verizon Commc'ns, Inc., No. 10 Civ. 3751 (DLC), 2010 WL 5392927, at *5 (S.D.N.Y. Dec.29, 2010) (citing Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998)).  In any event, "[a] physician has no duty to render services to every person seeking them. . . . [A] physician's decision of whether to treat a person amounts to a decision of whether to enter into a contractual relationship."  Williams v. United States, 242 F.3d 169, 176 (4th Cir. 2001) (internal quotation marks and citation omitted).  For all of these reasons, McGee has failed to sufficiently plead his equitable subordination claim, and it is therefore dismissed.

21

### III.   CONCLUSION

For the foregoing reasons, the Court grants State Farm's motion to dismiss pursuant to Rule 12(b)(6) and hereby dismisses the amended complaint in its entirety. Because McGee has already amended his complaint once, and because any further amendment would be futile, dismissal is with prejudice.  The Clerk of the Court is directed to close this case and enter judgment in favor of State Farm.

SO ORDERED.

Dated:      Brooklyn, New York
            November 8, 2011

                                    _____/s/_____
                                    I. Leo Glasser
                                    Senior United States District Judge